IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| EDNA JEAN JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:12-cv-1346-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court for findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. The court held a bench trial on February 24 and 25, 2014. Based on the evidence presented and heard on those dates, the court makes the following findings of fact and conclusions of law.

## I.  FINDINGS OF FACT

1.  Plaintiff Edna Jean Jenkins ("Jenkins") is 46 years old and resides in Walterboro, SC. Trial Tr. vol. 1 at 6.

2.  Shana Crosby ("Crosby") is 38 years old and is employed by the government as a rural postal carrier. Trial Tr. vol. 2 at 47-49.

3.  On June 4, 2011, Jenkins was having a birthday party for her grandson at her house in Walterboro. Trial Tr. vol. 1 at 8-9. That afternoon, she drove to pick up her daughter's boyfriend, Oreantha Turner ("Turner"), who lives on Drain Road in Smoaks, SC. Id. at 8-10. Jenkins was driving a 2001 Ford Expedition. Id. at 8, 13.

4.      Drain Road is a two lane rural road that is about two and a half miles from beginning to end.  Id. at 10; Trial Tr. vol. 2 at 96.  On the date of the accident, the weather was clear and it had not been raining.  Trial Tr. vol. 2 at 59.

5.      While Jenkins was talking with Turner's mother in the yard, Jenkins saw a mail carrier, who she later learned was Crosby, stop by the mailbox.  Trial Tr. vol. 1 at 8, 10.  Crosby was driving a 2000 Chevrolet S10 extended cab truck.  Trial Tr. vol. 2 at 54.

6.      About a half mile from Turner's house, Drain Road intersects with Cemetery Road.  Trial Tr. vol. 2 at 68.  Drain Road and Cemetery Road form a "T intersection."  Trial Tr. vol. 1 at 43-44.  Cemetery Road is a short state road and the traffic laws of South Carolina apply to the intersection of Drain Road and Cemetery Road.  Id. 44.  There is a stop sign on Cemetery Road at the intersection.  Id. at 18; Pl.'s Exs. 28, 35.

7.      Going down Cemetery Road is part of Crosby's "line of travel" – an established route that she is required to drive in order to deliver mail.  Trial Tr. vol. 2 at 51.  Crosby would drive down Drain Road, make a left turn on Cemetery Road, go down Cemetery Road and make a U-turn at the cemetery at the very end of Cemetery Road, and turn right onto Drain Road heading in the opposite direction.  Id. at 61-63.  The cemetery is between an eighth and a quarter of a mile down Cemetery Road.  Id. at 108.

8.      Prior to the accident, Jenkins was aware of the intersection and knew that there was a stop sign on Cemetery Road where it intersected with Drain Road.  Trial Tr. vol 1 at 42, 67.  Jenkins had driven on Drain Road a few times before the day of the accident.  Id. at 2-3.

9.      After picking up Turner, Jenkins got back into her car and headed down Drain Road toward Cemetery Road and Walterboro.  Id. at 10-11.

10.     When Jenkins came around a curve on Drain Road, Crosby was 700 or 800 feet ahead of her.  Id. at 11.  Jenkins was driving between 45 and 50 miles per hour.  Id. at 55.

11.     The parties dispute the position of Crosby's car.  Jenkins testified that Crosby's car was half on the road and half off the road.  Id. at 20.  Jenkins assumed that there was a mailbox where Crosby was pulled over and thought that Crosby was delivering mail.  Id. at 11, 20.  It is undisputed that there was not a mailbox on Drain Road near the intersection with Cemetery Road on the day of the accident.[1]  Id. at 18.  Crosby testified that she was not on the side of the road and that she never pulled over to the right side of Drain Road while approaching Cemetery Road.  Trial Tr. vol. 2 at 74-78.  Because there was no mailbox near the intersection of Drain Road and Cemetery Road, and therefore no reason for Crosby to have pulled partially off the road, the court credits Crosby's testimony and finds that just before the collision she was driving in the right lane and was not partially off the road.

12.     Crosby turned on her left turn signal about 300 feet before Cemetery Road.[2]  Id. at 69.  Additionally, Crosby had a strobe light on top of her truck that was on at the time of the accident.  Id. at 31-31, 45, 110-11.  Crosby had been driving between

---

[1] There apparently is one near that location today.  Trial Tr. vol. 1 at 11.
[2] Jenkins does not remember whether or not Crosby had her left turn signal on, Trial Tr. vol. 1 at 81, and two witnesses to the accident scene testified that the left turn signal was still activated following the accident.  See Trial Tr. vol 2 at 31-32, 45.

40 and 45 miles per hour before slowing down to between 10 and 15 miles per hour in order to make her turn onto Cemetery Road.  Id. at 79, 102.

13. While approaching Crosby's vehicle, Jenkins moved over "just a tad," attempting to pass Crosby.  Trial Tr. vol. 1 at 21.  Jenkins's car was partially in the left lane but she did not move all the way over into that lane.  Id. at 21, 46.  Jenkins took her foot off the gas but did not apply the brakes as she attempted to pass Crosby.  Id. at 57-58.  Jenkins knew that the vehicle she was trying to pass was a postal vehicle because she recognized it as the vehicle she saw delivering mail at Turner's house.  Id. at 51.

14. As Jenkins was attempting to pass Crosby, Crosby began to turn left onto Cemetery Road.[3]  Trial Tr. vol. 2 at 83.  As Crosby turned, the cars collided in the middle of Drain Road at its intersection with Cemetery Road.  Trial Tr. vol. 1 at 46, 63; Def.'s Ex. 5.  The collision caused extensive damage to both cars and both Jenkins and Crosby were injured.

## II.   CONCLUSIONS OF LAW

1. The United States is the proper defendant in this action pursuant to 28 U.S.C. § 1346(b) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq.

2. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1346.

3. The FTCA imposes tort liability on the United States only "in the same manner and to the same extent as a private individual under like circumstances," 28

---

[3] Although Jenkins initially testified that Crosby was making a U-turn on Drain Road, she later admitted that she did not know whether Crosby was making a U-turn or a left turn onto Cemetery Road.  Trial Tr. vol. 1 at 17.  Additionally, the fact that the cars collided in the middle of the road as Crosby was turning would make it difficult for Jenkins to determine whether Crosby was turning left or making a U-turn.

U.S.C. § 2674, and only to the extent that "a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred," id. § 1346(b)(1).

4. Under the FTCA, procedural matters are governed by federal law; however, the FTCA directs courts to examine substantive legal issues pursuant to the laws of the place where the act or omission occurred. Miller v. United States, 932 F.2d 301, 303 (4th Cir. 1991) ("A plaintiff has an FTCA cause of action against the government only if she would also have a cause of action under state law against a private person in like circumstances. State law determines whether there is an underlying cause of action . . . ."); Dunbar Corp. v. Lindsey, 905 F.2d 754, 757 (4th Cir. 1990) ("United States liability under the FTCA depends upon state law."). In this case, Crosby alleges that Jenkins acted negligently while driving in South Carolina. Therefore, South Carolina law governs this action because South Carolina is the site of the alleged tort. 28 U.S.C. § 1346(b)(1).

5. To establish a cause of action in negligence, three essential elements must be proven: (1) a duty of care owed by defendant to plaintiff; (2) the breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty. Bishop v. S.C. Dep't of Mental Health, 502 S.E.2d 78, 82 (S.C. 1998).

6. Under the doctrine of comparative negligence, "a plaintiff in a negligence action may recover damages if his or her negligence is not greater than that of the defendant." Nelson v. Concrete Supply Co., 399 S.E.2d 783, 784 (S.C. 1991).

7.  "Negligence per se is established by showing a statute created a duty to the plaintiff and the defendant breached that duty by violating the statute." <u>Seals by Causey v. Winburn</u>, 445 S.E.2d 94, 96 (S.C. 1994).

8.  South Carolina law provides that "[n]o vehicle shall be driven on the left side of the roadway . . . when approaching within one hundred feet of or traversing any intersection." S.C. Code § 56-5-1880(a)(2).

9.  Based on the court's above findings of fact, the court concludes that Crosby's actions were not negligent. Crosby simply did not breach any duty of care owed to Jenkins.

10. Moreover, even if the court were to credit Jenkins's testimony and assume that Crosby was negligent in some respect, Jenkins's negligence – passing a car that has its turn signal on at an intersection without braking – is greater than Crosby's negligence. Therefore, even if Crosby were negligent, the doctrine of comparative negligence would bar any recovery by Jenkins.

### III.   CONCLUSION

Based on the foregoing, the court **FINDS AND CONCLUDES** that the United States is not liable or responsible for the alleged damages suffered by Jenkins.

**AND IT IS SO ORDERED**.

                                    **DAVID C. NORTON**
                                    **UNITED STATES DISTRICT JUDGE**

**December 30, 2014**
**Charleston, South Carolina**